**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

|  |  |  |
|---|---|---|
| **DARRICK J. CARTER,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL NO. 3:06CV747 |
| | ) | |
| **MICHAEL J. ASTRUE** | ) | |
| **Commissioner of** | ) | |
| **Social Security,** | ) | |
| | ) | |
| | ) | |

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This matter is before the court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on cross motions for summary judgment.[1] The Plaintiff, Darrick Carter, seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of the Defendant Commissioner denying his applications for Social Security Disability (DIB) and Supplemental Security Income (SSI). The Commissioner's final decision is based on a finding by an Administrative Law Judge (ALJ) that the Plaintiff was not disabled as defined by the Social Security Act (the Act) and applicable regulations.

For the reasons discussed below, it is the court's recommendation that the Plaintiff's Motion for Summary Judgment be GRANTED; that the Defendant's Motion for Summary Judgment be

---

[1] The administrative record in this case has been filed under seal, pursuant to Local Civil Rules 5 and 7(C). In accordance with these rules, the court will endeavor to exclude any personal identifiers such as the Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of the Plaintiff's arguments and will further restrict its discussion of the Plaintiff's medical information to only that which is necessary to properly analyze the case.

DENIED; and that the final decision of the Commissioner be REVERSED and REMANDED for further administrative proceedings consistent with this report and recommendation.

## I. PROCEDURAL HISTORY

The Plaintiff applied for DIB and SSI on December 9, 2004, and November 15, 2004, respectively, claiming disability due to sickle cell anemia, with an onset date of June 25, 2003. (R. at 48-59, 62). The Social Security Administration (Agency) denied the Plaintiff's claims initially and on reconsideration.[2] (R. at 32-37, 39-41). The Plaintiff requested a hearing and, on April 17, 2006, accompanied by counsel, he testified before an ALJ. (R. at 302-16). A vocational expert (VE) also testified. Id. The ALJ denied the Plaintiff's application, finding that he was not disabled under the Act. (R. at 15-22). The Agency Appeals Council (Council) denied the Plaintiff's request to review the ALJ's findings, making the ALJ's decision the final decision of the Commissioner subject to judicial review. (R. at 6-9).

## II. QUESTION PRESENTED

Is the Commissioner's decision that the Plaintiff is not entitled to benefits supported by substantial evidence on the record and the application of the correct legal standard?

## III. STANDARD OF REVIEW

In reviewing the decision of the Commissioner to deny benefits, the court is limited to determining whether the Commissioner's decision was supported by substantial evidence on the

---

[2] Initial and reconsideration reviews in Virginia are performed by an agency of the state government–the Disability Determination Services (DDS), a division of the Virginia Department of Rehabilitative Services–under arrangement with the Social Security Administration. 20 C.F.R. Part 404, Subpart Q. *See also* § 404.1503. Hearings before administrative law judges and subsequent proceedings are conducted by personnel of the federal Social Security Administration.

record and whether the proper legal standard was applied in evaluating the evidence. Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is more than a scintilla, less than a preponderance, and is the kind of relevant evidence a reasonable mind could accept as adequate to support its conclusion. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971); Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

In order to find whether substantial evidence exists, the court is required to examine the record as a whole, but it may not "undertake to re-weigh the conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (citing Craig, 76 F.3d at 589). In considering the decision of the Commissioner based on the record as a whole, the court must "take into account whatever in the record fairly detracts from its weight." Breeden v. Weinberger, 493 F.2d 1002, 1007 (4th Cir. 1974). The Commissioner's findings as to any fact, if the findings are supported by substantial evidence, are conclusive and must be affirmed. Perales, 402 U.S. at 390. While the standard is high, where the ALJ's determination is not supported by substantial evidence on the record, or where the ALJ has made an error of law, the district court must reverse the decision. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

A sequential evaluation of a claimant's work and medical history is required in order to determine if a claimant is eligible for benefits. 20 C.F.R. §§ 416.920 and 404.1520; Mastro, 270 F.3d at 177. The analysis is conducted for the Commissioner by the ALJ and it is that process that a court must examine on appeal to determine whether the correct legal standards were applied and whether the resulting decision of the Commissioner is supported by substantial evidence on the

record.

The first step in the sequence is to determine whether the Plaintiff was working at the time of application and, if so, whether the work constituted "substantial gainful activity" (SGA).[3] 20 C.F.R. §§ 416.920(b) and 404.1520(b). If a claimant's work constitutes SGA, the analysis ends and the claimant must be found "not disabled" regardless of any medical condition. Id. If the claimant establishes that he did not engage in SGA, the second step of the analysis requires him to prove that he has "a severe impairment . . . or combination of impairments which significantly limit[s] [his] physical or mental ability to do basic work activities." 20 C.F.R. §§ 416.920(c) and 404.1520(c). In order to qualify as a severe impairment that entitles one to benefits under the Act, it must cause more than a minimal effect on one's ability to function. Id. At the third step, if the claimant has an impairment that meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (listings of impairments) and lasts, or is expected to last, for twelve months or result in death, it constitutes a qualifying impairment and the analysis ends. 20 C.F.R. §§ 416.920(d) and 404.1520(d). If the impairment does not meet or equal a listed impairment, then the evaluation proceeds to the fourth step in which the ALJ is required to determine whether a claimant can return to his past relevant work[4] based on an assessment of the claimant's residual functional capacity

---

[3] SGA is work that is both substantial and gainful as defined by the Agency in the C.F.R. Substantial work activity is "work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." Gainful work activity is work activity done for "pay or profit, whether or not profit is realized." Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like, are not generally considered substantial gainful activities. 20 C.F.R. § 404.1572.

[4] Past relevant work is defined as SGA in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved. 20 C.F.R. §§ 416.965(a) and 404.1565 (a).

(RFC)[5] and the "physical and mental demands of work [the claimant] has done in the past." 20 C.F.R. §§ 416.920(e) and 404.1520(e). If such work can be performed, then benefits will not be awarded. Id. However, if the claimant cannot perform his past work, the burden shifts to the Commissioner at the fifth step to show that, considering the claimant's age, education, work experience, and RFC, the claimant is capable of performing other work that is available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(f) and 404.1520(f); Powers v. Apfel, 207 F.3d 431, 436 (4th Cir. 2000) (citing Bowen v. Yuckert, 482 U.S. 137, 146, n. 5 (1987)); Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The Commissioner can carry his burden in the final step with the testimony of a VE. When a VE is called to testify, the ALJ's function is to pose hypothetical questions that accurately represent the claimant's RFC based on all evidence on record and a fair description of all the claimant's impairments, as reasonably established by the evidence, so that the VE can offer testimony about any jobs existing in the national economy that the claimant can perform. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir.1989). Only when the hypothetical posed represents *all* of the claimant's substantiated impairments will the testimony of the VE be "relevant or helpful." Id. If the ALJ finds that the claimant is not capable of SGA, then the claimant is found to be disabled and entitled to benefits. 20 C.F.R. §§ 416.920(f)(1) and 404.1520(f)(1).

## IV. ANALYSIS

---

[5] RFC is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR-96-8p. When assessing the RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (*i.e.*, 8 hours a day, 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. Id. (Footnote omitted).

The ALJ found at step one of the analysis that the Plaintiff had not engaged in SGA since the alleged onset of his disability. (R. at 17). At steps two and three, the ALJ determined that the Plaintiff had the severe impairments of insulin dependent diabetes mellitus and sickle cell anemia, but that the impairments, when considered singly or in combination, did not meet or equal any listing in Regulation 4, Subpart P, Appendix 1, as required for him to be considered disabled at that stage of the analysis. (R. at 17-18). In the ALJ's findings, he determined that the Plaintiff had the following RFC:

> [Plaintiff] has the residual capacity to perform sedentary work that entails limited amounts of standing and walking and lifting up to ten pounds of weight. The claimant retains the ability to perform simple, routine, repetitive tasks of an unskilled nature.

(R. at 18-19). At step four, based on the Plaintiff's RFC, the ALJ determined that the Plaintiff would be unable to perform his past relevant work because those jobs had exertional requirements beyond sedentary. (R. at 20). Finally, at step five, the ALJ asked the VE whether there were sedentary entry-level jobs available for a hypothetical individual with the Plaintiff's RFC whose nonexertional symptoms are mild to moderate. (R. at 21). The VE stated in response that such a hypothetical individual could perform the jobs of hand assembler, sorter, and hand packer. Id. Accordingly, the ALJ concluded that the Plaintiff was not disabled under the Act and therefore not entitled to benefits. (R. at 22).

The Plaintiff moves for a finding that he is entitled to benefits as a matter of law, or in the alternative, he seeks reversal and remand for additional administrative proceedings. (Br. of the Claimant in Supp. of the Claimant's Mot. for Summ J. ("Pl.'s Mot.") at 2). In support of his position, the Plaintiff presents two arguments: (1) that the ALJ failed to consider the side effects of the Plaintiff's medication; and (2) that the ALJ did not assign the proper weight to the opinion of the

Plaintiff's treating physician. (Pl.'s Mot. at 2-3). The Defendant argues that the record before the court does not justify the payment of benefits and that the ALJ's decision should be affirmed. (Def.'s Mem. In Supp. of [His] Mot. for Summ. J. ("Def.'s Mem.") at 1).

**A.  The ALJ Credibility Analysis is Not Supported by Substantial Evidence**

The Plaintiff contends that the ALJ failed to consider the side effects of his medications in determining his RFC and resulting ability to work. (Pl.'s Mot. at 3). Specifically, the Plaintiff asserts that the morphine he must use to alleviate the pain caused by sickle cell anemia makes him feel drowsy and sleepy, which adversely affects his ability to engage in any kind of substantial gainful activity. Id. Because the Plaintiff's complaints regarding the side effects of his medications are part of the ALJ's credibility analysis of the Plaintiff's overall subjective complaints, the court reviews the ALJ"s credibility analysis in its entirety and not just the isolated issue of whether he considered the impact of the Plaintiff's medication.

After step three of the sequential analysis, but before deciding whether a claimant can perform past relevant work, the ALJ must determine the claimant's RFC. 20 C.F.R. §§ 404.1520(e), (f) and 404.1545(5)(I). The RFC determination must incorporate all of the claimant's impairments that are supported by the objective medical evidence in the record, including any impairments reasonably based on a claimant's subjective complaints. 20 C.F.R. § 404.1545(a). However, in analyzing a claimant's subjective complaints such as pain, fatigue, weakness, *etc.*, the ALJ must utilize a two-step process. Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996); 20 C.F.R. § 404.1529(a); SSR 96-7p (1996 SSR LEXIS 7, at 5-7). The first step is to determine whether there is an underlying medically-determinable physical or mental impairment, or combination of impairments, that reasonably could produce the pain or other symptoms. Id. If an underlying impairment reasonably could be expected

to produce the pain or other symptoms, then the second step requires the ALJ to evaluate the claimant's statements about the intensity and persistence of the subjective symptoms and the extent to which they could affect the claimant's ability to work. Craig, 76 F.3d at 595. The ALJ's step-two evaluation must take into account "all available evidence," and a credibility finding of a claimant's statements regarding the extent of any symptoms is made by considering the objective medical evidence of symptoms, the report of the claimant's daily activities, any aggravating factors, and any treatment or use of medications to relieve symptoms, to determine if such factors are consistent or contradictory with respect to the claimant's statement of subjective complaints. Craig, 76 F.3d at 595-96; SSR 96-7p (1996 SSR LEXIS 7, at 5-6, 11). At each step of the analysis, the ALJ must provide sufficient explanation to substantiate his conclusions, including the weight assigned to relevant evidence, so that a reviewing court can evaluate the basis for the final decision. Ivey v. Barnhart, 393 F. Supp. 2d 387, 389-90 (E.D.N.C. 2005) (citing Arnold v. Secretary, 567 F.2d 258, 259 (4th Cir. 1977)).

In regard to the issue of medication side effects, the ALJ acknowledged the Plaintiff's statements about the issue by stating that: "[t]he claimant stated that he uses morphine every two or three hours for pain, which makes him feel drowsy and sleepy . . . the claimant's sister, testified that he [the Plaintiff] is always groggy or sleeping." (R. at 18). However, even though the ALJ acknowledged the Plaintiff's complaints associated with his medication regimen, he did not find the Plaintiff's overall subjective complaints concerning the intensity, duration, and limiting effects of his symptoms to be credible, which the court presumes to include any impact of the medication side effects. As to the rationale for this finding, the ALJ asserted that the Plaintiff's statements concerning his symptoms were not consistent with his established functional limitations and his statements

concerning the daily activities that he could perform. (R. at 19). However, the ALJ simply stated that such evidence was inconsistent without elaborating on why those elements were inconsistent.

The ALJ suggests that because the Plaintiff noted his date of disability as occurring prior to the date when he last worked, such a circumstance constitutes an inconsistency. (R. at 19). However, the different dates and/or their sequence as cited are not evidence of an inconsistency if they are viewed in their proper context. Here, the Plaintiff listed a date of October 15, 2003, as when he stopped working his last full-time job. (R. at 63). However, the ALJ failed to note that the Plaintiff was terminated as of that date for excessive absenteeism because of his sickle cell anemia condition, and the ALJ also failed to note that the Plaintiff only held the position for two months. (R. at 69). At best, the Plaintiff's employment between August 15, 2003, and October 15, 2003, is more accurately described as a failed work attempt.

Additionally, the ALJ stated that the Plaintiff's description of his duties in the work attempt (that he worked eight hours per day, six days a week, and it entailed heavy lifting) was inconsistent when compared to his subjective complaints. (R. at 19). However, the evidence that the ALJ refers to in the record does not describe his duties as involving "heavy lifting." Instead, the Plaintiff listed his duties as "sweep, mop, windows, stairs, and take out trash." (R. at 85). Even though the Plaintiff indicated that his job entailed eight hours of walking and standing, that factor is not inconsistent with his subjective complaint that his sickle cell anemia symptoms caused him pain to the extent that he had to miss work completely. The Plaintiff was fired from the position because his symptoms rendered him unable to perform, resulting in excessive absenteeism, and whatever he listed as being able to perform while at work on his "good" days is not inconsistent with his subjective complaints of overall disabling pain. Moreover, the Plaintiff specifically stated that he had to quit work because

he could not stand or walk the required amount for his job, which, if anything, is consistent with his subjective complaints. (R. at 117). However, the ALJ failed to take note of such evidence.

The ALJ also makes the conclusory inference that because the Plaintiff's medication alleviated his pain, that he must be able to work. (R. at 19). However, as the Plaintiff emphasizes, the ALJ failed to analyze or account for the side effects of the Plaintiff's medication whereby it makes him groggy and drowsy to the extent that he is unable to function effectively. There is nothing in the ALJ's findings as to whether the Plaintiff's subjective complaints could be related to the side effects of his medication. Therefore, whether the Plaintiff's pain could be alleviated enough so that he would be able to work was irrelevant if the medication incapacitated him.

The ALJ also noted as another inconsistency that the Plaintiff had no difficulty paying attention, following instructions, handling stress, or getting along with others. (R. at 19). However, the Plaintiff never asserted that his pain caused any mental limitation, only that his pain affected his ability to perform the physical aspects of working, *i.e.*, sitting, standing, lifting. (R. 309-10). Therefore, just because the Plaintiff had no difficulty with his mental abilities, that is not relevant to the issue of the credibility of his subjective complaints that related specifically to his *physical* ability to perform substantial gainful activity.

The ALJ also enumerates in his decision a list of activities that the Plaintiff had noted he could perform, implying that because he was able to perform such activities, that circumstance was also inconsistent with his subjective complaints. (R. at 19). However, the ALJ does not accurately portray the Plaintiff's level of participation in such activities. For example, he notes that the Plaintiff could prepare his own lunch, do his laundry, ride in a car, manage his money, play chess, and lift ten pounds. Id. However, the Plaintiff, in fact, stated that preparing lunch is the only meal he was

capable of fixing and that it took him fifteen to twenty minutes to accomplish the task. (R. at 90). In addition, there are no details in the record of what type of lunches he prepared, be it something beyond a sandwich or simply heating up something. Furthermore, the Plaintiff never claimed to be so incapacitated that he could not perform even basic tasks such as preparing a meal. Although the Plaintiff noted that he does his laundry, he also qualified his remark by stating that he could barely do so and that it took up to four hours for him to complete such efforts. (R. at 90).

      As far as his ability to ride in a car, the Plaintiff noted that he only did so about once a week. Presumably, someone who is completely disabled could nevertheless ride in a car once a week. There is nothing in the record to indicate that the Plaintiff spent an inordinate amount of time riding in a vehicle as, for example, a cab driver or a transport driver, or that he frequently took long trips, which could be inconsistent with an inability to sit/stand/walk for an eight-hour workday. As concerns the Plaintiff's ability to manage his money, such a circumstance hardly constitutes an inconsistency where he said he possessed very little money anyway. (R. at 115). The ALJ also noted that the Plaintiff played chess; however, the Plaintiff stated that he rarely played – maybe once every five months. (R. at 92). While the fact that the Plaintiff played chess every day could reasonably be perceived as inconsistent with his assertion that he is unable to sit for long periods of time, actually doing so on such infrequent occasion, as he stated, is not inconsistent with his subjective complaints of disabling pain. Finally, even though the Plaintiff admitted that he is able to lift up to ten pounds, such an ability is not inconsistent with his subjective complaints because he never asserted that he had problems with muscle weakness. Instead, his complaints were that his pain prevented him from sustained physical activity. Furthermore, simply stating that a claimant is able to lift a certain amount of weight, without giving some idea as to the frequency of lifting, is not sufficiently informative as

to whether that ability is inconsistent with a claimant's subjective complaints.

The ALJ also found that the Plaintiff's credibility was further "diminished" because he attended classes at an Adult Learning Center. (R. at 19). Even though the evidence the ALJ's cites stated that the Plaintiff was enrolled in classes that met a half day, two times a week, the same evidence also confirmed that in the four weeks that the class had met, the Plaintiff had already missed three classes on account of the symptoms caused by his condition. (R. at 194). If anything, the Plaintiff's inability to consistently attend a class that met only two days a week is consistent with his subjective complaints, and tends to bolster the assertion that his pain prevented him from being able to engage in any kind of substantial gainful activity on a consistent basis.

Accordingly, the Plaintiff quantified his degree of participation in the activities that the ALJ identified. Simply stating that the Plaintiff engaged in a certain function, and then declaring that such activity is inconsistent with his subjective complaints, without factoring in the level of participation, fails to constitute substantial evidence supporting the ALJ's finding because an accurate portrayal of the level of participation as presented in the record is more consistent with the Plaintiff's subjective complaints. Therefore, in order to utilize the Plaintiff's daily activities as a factor in a credibility analysis, a more accurate portrayal of the quality, frequency, and independence of the Plaintiff's participation in such activities was required.

**B.    The ALJ's Treating Physician Analysis is Not Supported by Substantial Evidence**

The Plaintiff's second contention is that the ALJ did not perform a proper treating physician analysis. (Pl.'s Mot. at 5). Under current applicable regulations and case law, a treating physician's opinion must be given controlling weight if it is well-supported by medically-acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record.


Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996); 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2); SSR 96-2p. However, the regulations do not require that an ALJ accept opinions from a treating physician in every situation, *e.g.*, when the physician opines on the issue of whether the claimant is disabled for purposes of employment (an issue reserved for the Commissioner), or when the physician's opinion is inconsistent with other evidence, or when it is not otherwise well-supported. Jarrells v. Barnhart, No. 7:04-cv-00411, 2005 U.S. Dist LEXIS 7459, at *10-11 (W.D. Va. April 26, 2005). *See* 20 C.F.R. §§ 404.1527(d)(3), (d)(4), (e) and 416.927(d)(3), (d)(4), (e). If the treating physician's opinion is not weighted as being controlling, then it must be analyzed as any other medical opinion of record. 20 C.F.R. § 404.1527(d). Furthermore, the ALJ must articulate the reasons for the weight given to a treating source's medical opinions, 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2), and must cite specific supporting evidence so that a reviewing court can discern the basis for the decision. Schoofield v. Barnhart, 220 F. Supp. 2d 512, 519 (D. Md. 2002). *cf*, Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir. 1985) ("The ALJ is required to make credibility determinations . . . [b]ut such decisions should refer specifically to the evidence informing the ALJ's conclusion. This duty of explanation is always an important aspect of the administrative charge"). In evaluating the weight of a medical opinion, the ALJ must consider the following factors: (1) the physician's length of treatment of the claimant; (2) the physician's frequency of examination, (3) the nature and extent of the treatment relationship; (4) the support of the physician's opinion afforded by the medical evidence of record; (5) the consistency of the opinion with consideration of the record as a whole; and (6) the specialization of the treating physician. 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2).

      The ALJ declined to assign controlling weight to Dr. Smith's opinion based on the following

rationale:

> Dr. Smith's assessment does not pass the test. His treatment notes reflect minimal findings on examination, i.e., abdominal tenderness upon palpation when having a sickle cell exacerbation, however, he did not impose any functional limitations on the claimant until he completed the assessments marked as exhibits 13F and 14F in March 2006, at which time he indicated that the claimant could not perform even sedentary work. Moreover, the determination of disability in Social Security claims is an issue reserved to the Commissioner.

(R. at 20). Although it is clear that Dr. Smith's opinion was not assigned controlling weight, the ALJ failed to indicate what weight was assigned. Without such an indication, the court cannot even deduce how Dr. Smith's opinion was factored into the ALJ's overall RFC assessment. Additionally, the ALJ's assessment lacks substantial evidence in that he essentially provided only two reasons to support his analysis: (1) that Dr. Smith's treatment notes reflect minimal findings on examination; and (2) that the physician failed to impose any functional limitations on the Plaintiff. (R. at 20). However, the ALJ did not analyze or indicate how he considered any of the factors enumerated in §§ 404.1527(d)(2) and 416.927(d)(2), including the length of time Dr. Smith had been treating the Plaintiff, his medical speciality, the frequency of examination, and the nature and the extent of the treatment relationship between Dr. Smith and the Plaintiff. Additionally, the court cannot determine whether the ALJ, based on the reasons provided, is implying that either Dr. Smith's opinion is inconsistent with particular medical evidence in the record, or that the doctor's opinion is not supported by the medical evidence as a whole. The stated reasons are simply insufficient for the court to be able to declare that the treating physician analysis is supported by substantial evidence. The ALJ needs to explain in greater detail the weight he is assigning to Dr. Smith's opinion and consider all the factors required by regulation in his analysis of the treating physician's opinion(s).

Although the court concludes that the record does not provide substantial evidence to sustain

the ALJ's conclusion of the Plaintiff not being disabled, the court is unable at the same time to recommend an outright award of benefits because the record is also lacking as to necessary administrative findings to support the award of benefits, including that of the Plaintiff's credibility which is more properly assessed initially on the administrative level. The court is mindful of the prolonged period of time that the matter has been pending and, therefore, if remanded, it is recommended that the ALJ expedite the process by a review of the Plaintiff's most recent medical records and/or the scheduling of a consultative examination with appropriate medical testing so as to be able to make a final determination, with explanation, regarding the Plaintiff's current physical limitations and their impact on his ability to obtain and maintain gainful employment.

## V. CONCLUSION

Based on the foregoing analysis, it is therefore the recommendation of this court that Plaintiff's Motion for Summary Judgment be GRANTED; that the Defendant's Motion for Summary Judgment be DENIED; and that the final decision of the Commissioner be REVERSED and REMANDED for further administrative proceedings consistent with this report and recommendation.

Let the Clerk forward a copy of this Report and Recommendation to the Honorable James R. Spencer and to all counsel of record.

It is so Ordered.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within ten (10) days after being served with a copy of this report may result in the waiver of any right to a *de novo* review of the**

**determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

                                                      _____/s/_____
                                                      Dennis W. Dohnal
                                                      United States Magistrate Judge

Date: 4/17/07